IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 22-cr-30081 |
| ) | |
| **EDDIE D. SIMS,** ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

**SUE E. MYERSCOUGH, U.S. District Judge.**

This matter comes before the Court on Defendant Eddie D. Sims's Motion to Revoke Detention Order.  See Def.'s Mot., d/e 17. For the reasons that follow, the motion is DENIED.

**I. BACKGROUND**

On December 6, 2022, a grand jury indicted Mr. Sims on two firearms charges.  See Indictment, d/e 1.  Count I alleges that Mr. Sims transferred a .22-caliber semiautomatic handgun to Darius Buerkett, a prohibited person, in violation of 18 U.S.C. § 922(d)(1). Id. at 1.  Count II alleges that Mr. Sims aided and abetted Mr. Buerkett's unlawful possession of that firearm, in violation of 18 U.S.C. § 2 and 18 U.S.C. § 922(g)(1).  Id. at 2.

Mr. Sims was arrested on January 16, 2023.  Two days later, Mr. Sims appeared before U.S. Magistrate Judge Karen L. McNaught for arraignment.  On the Government's oral motion, the Magistrate set a detention hearing for January 20.  Before one could be held, however, Mr. Sims orally moved to vacate the hearing, arguing that neither of his alleged offenses qualified him for pretrial detention.  The Government responded that two provisions of the Bail Reform Act—18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(B)—independently authorized Mr. Sims's detention.  The Magistrate agreed in part, finding that § 3142(f)(1)(E) covered Mr. Sims's alleged offenses.  Mr. Sims thereafter moved for and received a five-day continuance.

In the interim, the Government filed a supplemental motion for detention.  Gov.'s Supp. Mot. for Detention, d/e 12.  The Government argued that both 18 U.S.C. §§ 3142(f)(1)(E) and (f)(2)(A) authorized Mr. Sims's pretrial detention.  See id. at 2.  As to § 3142(f)(1)(E), the Government contended that each of Mr. Sims's charges "unquestionably . . . involve the possession or use of a firearm," since Mr. Sims "had to have possessed the firearm in question to be able to have transferred it."  Id. (citing 18 U.S.C. §

3142(f)(1)(E)).  The Government also argued, though in passing and without citation, that Mr. Sims posed a "serious risk" of flight and so warranted a detention hearing under § 3142(f)(2)(A).  Id. at 3.; see also id. at 6 ("As it relates to risk of flight, the government will stand on what is contained in the PTSR [Pretrial Services Report].").

The detention hearing resumed on January 25.  Beforehand, Mr. Sims moved the Magistrate to reconsider her decision to allow the Government to seek detention.  The Magistrate denied that motion.  Instead, the Magistrate concluded that 18 U.S.C. § 3142(f)(1)(E) applied in Mr. Sims's case and allowed the detention hearing to proceed.

Mr. Sims first argued that his sister, Louise Archer, would make a suitable third-party custodian.  The Probation Office reached the same conclusion, though it still recommended Mr. Sims's detention.  See d/e 13 at 3–4.  Ms. Archer testified that Mr. Sims was welcome to live with her and her girlfriend in their Decatur home during his pretrial release.  Ms. Archer further testified that she was willing to transport Mr. Sims and to secure him a job at Caterpillar's Decatur plant.  In addition to this change in residence, Mr. Sims proposed several other conditions of release,

including home detention with electronic monitoring, mandatory anger-management therapy, and limiting any visits with his partner "to times when [Ms. Archer's home] is supervised by the third-party custodian." Def.'s Mot., d/e 17, at 7.

The Government persisted in its request. Pointing to the report filed by Mr. Sims's arresting officer, the Government urged the Magistrate to find that Mr. Sims's case was not "a simple possession of a firearm by a felon." Tr., d/e 15, at 19:13–14. Instead, the Government reasoned, the arresting officer rightly concluded that "Darius [Buerkett] and Eddie were walking around with a loaded gun and extra ammunition looking for an opportunity to use it to shoot at whoever thought [Mr. Buerkett] stole their car." Id. at 19:25–20:4. The Government also contended that "[i]t was totally speculative if [Mr. Sims] could get a job at Caterpillar." Id. at 18:18–19; see also id. at 18:19–22 ("And I would also submit if it was so easy for him to get and obtain a job, there's no reasons [sic] that he shouldn't be employed already.").

The Magistrate ultimately granted the Government's motion for detention. Although the record of the hearing is incomplete—a technical issue of some kind prevented the last few minutes from

being captured—the Magistrate closely considered Mr. Sims's proffered evidence. But the Magistrate also expressed concern "about the potential danger to the community if [Mr. Sims was] released." Id. at 33:7–8. And the Magistrate appeared especially concerned for the purported target of Mr. Sims's activity on the night of his arrest. Id. at 34:14–16 ("-- reasonably be assured that whoever that is, is still safe. And so for that reason, Mr. Sims, I will order that you be detained."). On February 3, 2023, the Magistrate filed an Order of Detention memorializing her January 25 oral order. Order, d/e 16.

This appeal followed.

## II. DISCUSSION

After a magistrate judge has ordered a criminal defendant detained before trial, the defendant may file "a motion for revocation or amendment to the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b). Any such motion "shall be determined promptly." Id. This Court reviews the magistrate judge's detention order—including any evidence adduced at a detention hearing—de novo. See United States v. Wilks, 15 F. 4th 842, 847 (7th Cir. 2021).

Mr. Sims now avails himself of this avenue for review. See Def.'s Mot., d/e 17. He argues that the Magistrate "committed reversible legal error . . . in three respects." Id. at 1–2. The Court considers each in turn.

As a threshold matter, Mr. Sims contends that the Magistrate was wrong to hold a detention hearing in the first place. There is little in Mr. Sims's record to support his detention as a flight risk, so the only enabling statutory provision would be § 3142(f)(1)(E). As noted above, § 3142(f)(1)(E) requires—though only on the Government's motion—a detention hearing in any case involving "any felony . . . not otherwise a crime of violence that involves . . . the possession or use of a firearm or destructive device." 18 U.S.C. § 3142(f)(1)(E). Here, Count I charges Mr. Sims with giving a gun to Mr. Buerkett, who previously had been convicted of a felony. See Indictment, d/e 1, at 1. The statute underlying Count I prohibits individuals from "sell[ing] or otherwise dispos[ing] of any firearm or ammunition to any person knowing or having reasonable cause to believe that such person, including as a juvenile, . . . has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year." 18 U.S.C. § 922(d)(1). Similarly, Count II

charges Mr. Sims with aiding and abetting Mr. Buerkett's unlawful possession of a firearm.  See Indictment, d/e 1, at 2 (citing 18 U.S.C. §§ 2 and 922(g)(1)).

Mr. Sims contends that a detention hearing was unwarranted because "possession of a firearm is not an element of either of Mr. Sims' charged offenses." Id. at 2.  Essentially, Mr. Sims disputes that <u>disposing</u> of a firearm necessarily entails <u>possessing</u> a firearm. The Court disagrees.  Possession, of course, "may be either actual or constructive." <u>United States v. Kitchen</u>, 57 F.3d 516, 520 (7th Cir. 1995).   In either case, a defendant can be said to have possessed contraband if he had "the authority or the ability to exercise control over the contraband." Id. at 523 (characterizing this factor as "the essential proof of possession").  As a matter of common sense, Mr. Sims could not have given Mr. Buerkett the firearm as alleged without first possessing it.  Nor could Mr. Sims aid or abet Mr. Buerkett's possession of the firearm without sharing in Mr. Buerkett's liability for possessing the firearm.  Mr. Sims's alleged offenses, therefore, satisfy the possession element set forth in § 3142(f)(1)(E).  This means that the Magistrate rightly held a detention hearing.

But the question remains whether the Magistrate rightly detained Mr. Sims. Mr. Sims offers two reasons to find that his detention was improper. First, according to Mr. Sims, the Magistrate "inverted the burden of proof, improperly holding the government to a lighter standard than the law requires." Def.'s Mot., d/e 17, at 2. Mr. Sims is correct. The Government must prove that a criminal defendant warrants detention as a risk to public safety by clear and convincing evidence. United States v. Salerno, 481 U.S. 739, 750–51 (1987). Here, however, the Magistrate substituted the following standard: "It is also the government's burden to prove, <u>but by a preponderance of the evidence</u>, that there are no conditions or combination of conditions that will reasonably assure the safety of the community or someone within that community." Tr., d/e 15, at 28:22–29:2 (emphasis added). That was error. But the Court must be convinced not that the Magistrate applied an improper standard, but that the Government did not meet the requisite burden of proof.

Under the Bail Reform Act, pretrial detention is appropriate only if the Court "finds that no condition or combination of conditions will reasonably assure the appearance of the person as

required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  In reaching this determination, the Court must weigh the factors set forth at 18 U.S.C. § 3142(g), including:

> 1) The "nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim";
> 2) The "weight of the evidence against the person";
> 3) The "history and characteristics of the person, including . . . the person's character, physical and mental condition, [and] family ties"; and
> 4) The "nature and seriousness of the danger to any person or the community that would be posed by the person's release."

See id.  As noted above, the Government bears the burden of proving, by clear and convincing evidence, that its interest in protecting the public safety warrants pretrial detention.  Salerno, 481 U.S. at 750–51.

The Court begins its de novo review with the "nature and circumstances of the offense charged" and the "weight of the evidence" against Mr. Sims.  Mr. Sims is charged with giving Mr. Buerkett a gun despite knowing that Mr. Buerkett had been convicted of a felony.  The Magistrate received and reviewed only one piece of evidence relevant to the charged offenses: a police report documenting the arrest of the two men.  The report is highly persuasive evidence of Mr. Sims's liability.  The report reflects that:

- Around 10:30 p.m. on May 13, 2022, Springfield police officers observed Mr. Sims and Mr. Buerkett crossing a busy roadway without using the crosswalk.
- The officers quickly located a firearm tucked into Mr. Buerkett's waistband.
- Shortly thereafter, Mr. Sims told the officers that the gun belonged to him.  Mr. Sims then provided the officers with his Firearms Owner Identification (FOID) card.  Mr. Sims also showed the officers that he was carrying several magazines of ammunition in a crossbody bag.
- After being advised of and waiving his Miranda rights, Mr. Sims told the officers that someone recently had posted a video of a car theft to Facebook.  The poster claimed that Mr. Buerkett had stolen the car in question and threatened Mr. Buerkett with retribution.  At some point that evening, Mr. Sims gave Mr. Buerkett his gun.
- One of the officers then asked Mr. Sims "why he didn't just hold the gun since it was his." See Gov.'s Resp. ex. A, d/e 18-1, at 5.  Mr. Sims "said he was going to let Darius [Buerkett] 'take care of his business.'" Id.
- "It seemed clear" to the reporting officer "that Darius [Buerkett] and Eddie were walking around with a loaded gun and extra ammunition looking for an opportunity to use it to shoot at whoever thought [Mr. Buerkett] stole their car." Id.

What the Magistrate did not have, however, was the footage taken from the arresting officers' bodycams, which the Government later provided pursuant to a Court order.  This footage diverges from the officers' report in several respects.  In fact, the footage largely corroborates Mr. Sims's interpretation of his arrest.

Yet the footage does not change either the "nature" or the "circumstances of the offense charged." The Indictment alleges that Mr. Sims gave a loaded gun to someone whose criminal history disentitled him to possess a firearm. Federal law makes such conduct unlawful for a reason: gun possession by those previously convicted of felony offenses poses a profound danger to the public safety. Although "most felons are nonviolent," decades of social-science research have demonstrated that "someone with a felony conviction on his record is more likely than a nonfelon to engage in illegal and violent gun use." United States v. Yancey, 621 F.3d 681, 685 (7th Cir. 2010). "[E]ven handgun purchasers with only 1 prior misdemeanor conviction and no convictions for offenses involving firearms or violence [are] nearly 5 times as likely as those with no prior criminal history to be charged with new offenses involving firearms or violence." Kanter v. Barr, 919 F.3d 437, 449 (7th Cir. 2019), abrogated by New York State Rifle & Pistol Ass'n, Inc. v. Bruen, 142 S. Ct. 2111 (2022) (citation omitted). It hardly can be said, therefore, that the "nature and circumstances of the offense charged" weigh in favor of Mr. Sims's release.

The record also provides strong evidence of Mr. Sims's culpability.  Cf. 18 U.S.C. § 3142(g)(2).  The bodycam videos show the arresting officers recovering a firearm from Mr. Buerkett's waistband.  The same videos capture Mr. Sims admitting (1) that he gave the firearm to Mr. Buerkett and (2) that he knew of Mr. Buerkett's previous theft conviction and his parole status.  A reasonable jury could find against Mr. Sims based on this evidence alone.  See 18 U.S.C. § 922(d)(1) (elements).

Mr. Sims's "history and characteristics," too, weigh against his release.  Cf. 18 U.S.C. § 3142(g)(3).  Although Mr. Sims's criminal convictions are confined to juvenile dispositions, his record as an adult—as the Government has argued—provides cause for grave concern.  This record includes a slew of domestic-battery arrests and orders of protection entered against Mr. Sims.  Moreover, just before he was arrested in this cause, Mr. Sims was involved in a disturbance in which he kicked down another family's door.  Combining an "anger-management problem" with firearms, as Government counsel argued at Mr. Sims's detention hearing, can create "a very combustible situation."  See Tr., d/e 15, at 21:9–13.  Given these considerations, the Court cannot find that even the

strictest conditions will ameliorate the risk Mr. Sims poses to the community.  Mr. Sims must remain in pretrial detention.

### III. CONCLUSION

For these reasons, Defendant Eddie D. Sims's Motion to Revoke Detention Order (d/e 17) is DENIED.

**IT IS SO ORDERED.**

**ENTERED:  MARCH 24, 2023**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**