IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 22-cr-30081 |
| EDDIE D. SIMS, | ) ) ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

**SUE E. MYERSCOUGH, U.S. District Judge.**

Before the Court is Defendant Eddie D. Sims's Motion to Dismiss Indictment.  See Def.'s Mot. Dism., d/e 32.  Also before the Court is Mr. Sims's Motion to Set Case for a Joint Change of Plea and Sentencing Hearing and for the Preparation of a Pre-Plea Presentence Report, d/e 33, which Mr. Sims filed concurrently with his motion to dismiss.

In his motion to dismiss, Mr. Sims argues that, under the "historical tradition" test set forth in N.Y. State Rifle & Pistol Ass'n v. Bruen, 142 S. Ct. 2111 (2022), the statutes underlying his two-count Indictment are unconstitutional on their face and as applied to him.  Def.'s Mot. Dism., d/e 32, at 5 (citing Atkinson v. Garland,

Page **1** of **7**

70 F.4th 1018 (7th Cir. 2023) (vacating pre-Bruen decision finding felon-in-possession prohibition constitutional and remanding for historical analysis required by Bruen)).  According to Mr. Sims, both Bruen and the Seventh Circuit's recent decision in Atkinson compel a "a proper, fulsome analysis of the historical tradition supporting" the statutes at issue here.  Atkinson, 70 F.4th at 1022.

Mr. Sims is correct.  Under Atkinson, this Court is obligated to analyze every constitutional challenge to a firearms restriction—criminal, civil, administrative, or otherwise—through the framework set out in Bruen.  Id. ("Nothing allows [courts] to sidestep Bruen in the way the government invites.").  In other words, this Court "must undertake the text-and-history inquiry the [Bruen] Court so plainly announced and expounded upon at great length."  Id.  And that inquiry, according to the Supreme Court, must proceed as follows:

> [W]hen the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.  Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

Bruen, 142 S. Ct. at 2129–30.  Accordingly, the Government shall file its response brief by no later than noon on August 15, 2023. Mr. Sims may file a reply brief, if appropriate, by no later than noon on September 12, 2023.

For further guidance, the Court directs the parties' attention to Atkinson, in which the Seventh Circuit proposed a set of "interrelated and non-exhaustive questions [that] may help focus the proper analysis." Atkinson, 70 F.4th at 1023.  The parties' briefing should address these questions, including:

> 1. [Do] § 922(g)(1) [and § 922(d)] address a "general societal problem that has persisted since the 18th century?" Bruen, 142 S. Ct. at 2131. If this problem existed during a relevant historical period, did earlier generations address it with similar or "materially different means?" Id.
>
> 2. What does history tell us about disarming those convicted of crimes generally and of felonies in particular?  Among other sources, the parties could look to commentary from the Founders, proposals emerging from the states' constitutional ratifying conventions, any actual practices of disarming felons or criminals more generally around the time of the Founding, and treatment of felons outside of the gun context (to the extent this treatment is probative of the

Founders' views of the Second Amendment). When considering historical regulations and practices, the key question is whether those regulations and practices are comparable in substance to the restriction[s] imposed by § 922(g)(1) [and § 922(d)]. To answer the question, . . . the parties should consider how the breadth, severity, and the underlying rationale of the historical examples stack up against § 922(g)(1) [and § 922(d)].

3. Are there broader historical analogues to § 922(g)(1) [and § 922(d)] during the periods that Bruen emphasized, including, but not limited to, laws disarming "dangerous" groups other than felons?  The parties should not stop at compiling lists of historical firearms regulations and practices.  The proper inquiry, as we have explained, should focus on how the substance of the historical examples compares to § 922(g)(1) [and § 922(d)].

4. If the [parties'] historical inquiry identifies analogous laws, do those laws supply enough of a historical tradition (as opposed to isolated instances of regulation) to support § 922(g)(1) [and § 922(d)]? On this front, the parties should provide details about the enforcement, impact, or judicial scrutiny of these laws, to the extent possible.

5. If history supports [Mr. Sims's] call for individualized assessments or for a distinction between violent and non-violent felonies, how

> do we define a non-violent or a non-dangerous felony? And what evidence can a court consider in assessing whether a particular felony conviction was violent? For instance, can a court consider the felony conviction itself, the facts of the underlying crime, or sentencing enhancements? Bruen shows that these distinctions should also have firm historical support. See 142 S. Ct. at 2132–33 (explaining that the court must assess whether modern and historical regulations are "relevantly similar," including in terms of how and why the regulations burden gun rights).

Atkinson, 70 F.4th at 1023–24.

The parties should freely "cast a wider net and provide more detail about whatever history they rely on."[1] Id. at 1024. They also

---

[1] On this point, the dissenting opinion in Atkinson is particularly instructive:

> The assessment of any gun regulation should begin with a look at the type of measure under consideration: to use Professor Volokh's taxonomy, is it a "what, who, where, how, or when" regulation? Once we know that, we can begin the task of identifying the proper historical analogues. For example, felon disarmament is a "who" restriction. That directs us to historical restrictions on the classes of persons who were allowed to own or possess guns. In addition, one needs to look at the regulatory method the statute embodies: total disarmament for life; disarmament for a term of years; qualified rights to have the weapon with proper

should freely employ the expert services of historians and historiographers.  See Jacob D. Charles, The Dead Hand of a Silent Past, 73 Duke L.J. (forthcoming 2023) (manuscript at 69–70) (on file with author) (arguing that expert historians "can help inform a judge about how complicated and contested the historical landscape can be"); see also United States v. Bullock, No. 18-cr-165, 2023 WL 4232309, at *15 (S.D. Miss. June 28, 2023) ("The most disappointing failure is that the party with the burden to prove history and tradition—the United States—did not designate a historian to testify on the analogues, if any, to modern felon-in-possession laws.").  In a similar vein, this Court will invite and "accept amicus briefs to assist with its inquiry." Atkinson, 70 F.4th at 1024.

---

    sureties; restrictions on particularly sensitive places (courthouses, churches, schools) or times or manner (open-carry, concealed-carry).  Throughout all of this, one must also bear in mind that Bruen does not demand historical "dead ringers."  It is enough to identify a problem with private gun ownership and find the relevantly similar type of solution that was thought to be adequate by our forebears.

Atkinson, 70 F.4th at 1034–35 (Wood, J., dissenting).

As for Mr. Sims's motion to set a combined change of plea and sentencing hearing, see Def.'s Mot., d/e 33, that motion is GRANTED. A joint change of plea and sentencing hearing is hereby SET for November 16, 2023, at 10:00 a.m. in Courtroom II in Springfield before U.S. District Judge Sue E. Myerscough. The initial pretrial conference currently set for July 20, 2023, at 9:00 a.m. is RESET to November 20, 2023, at 9:00 a.m. in Courtroom III in Springfield before U.S. Magistrate Judge Karen L. McNaught. And the jury trial currently set for August 1, 2023, at 9:00 a.m. is RESET to December 5, 2023, at 9:00 a.m. in Courtroom II in Springfield before Judge Myerscough. The Court finds that granting the motion to continue is in the interests of justice and outweighs Mr. Sims's and the public's interest in a speedy trial. 18 U.S.C. § 3161(h)(7)(A). Lastly, the U.S. Probation Office is DIRECTED to prepare a pre-plea investigation report.

**IT IS SO ORDERED.**

**ENTERED: JULY 11, 2023**

**FOR THE COURT:**

*s/ Sue E. Myerscough*
**SUE E. MYERSCOUGH**
**UNITED STATES DISTRICT JUDGE**